IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STATE FARM LLOYDS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| PATRICIA M. CHANDLER, WILLIAM | § | |
| CHANDLER, INDIVIDUALLY AND D/B/A | § | |
| C&M APARTMENTS, SHANE COREY | § | 4:04cv186 |
| NORMAN AND VICTORIA NORMAN, | § | |
| INDIVIDUALLY AND AS NEXT FRIENDS | § | |
| OF JEREMIAH NORMAN, A MINOR, | § | |
| AND AS THE REPRESENTATIVES OF | § | |
| THE ESTATE OF JASMINE ELIZABETH | § | |
| NORMAN, DECEASED ET AL., | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Plaintiff's Motion for Summary Judgment [Doc. No. 17]. Having reviewed the motion, response, reply, evidence and applicable law, the Court is of the opinion that the motion should be granted.

## BACKGROUND

This insurance coverage dispute arises out of a personal injury lawsuit styled: *Shane Corey Norman and Victoria Norman, Individually, as Next Friends of Jeremiah Norman, a Minor, and as the Representatives of the Estate of Jasmine Elizabeth Norman, Deceased v. Patricia M. Chandler, et al.*, Cause No. 03-1753, 59th Judicial District Court, Grayson County, Texas (the "Underlying Suit"). The Plaintiffs in the Underlying Suit ("the Normans"), allege that the Defendants in the Underlying Suit ("the Chandlers") failed to properly inspect, maintain and repair an apartment in which the Normans lived, including the apartment's HVAC system and the building envelope, which

led to water/moisture intrusion and fostered an environment conducive to mold growth.  These conditions, the Normans contend, caused their infant daughter's death and caused physical injuries to their infant son, the infant daughter's twin brother.

The Chandlers were insured through an insurance policy issued by State Farm Lloyds that covered the time period during which the incidents made the basis of the Underlying Suit occurred (the "Policy").  State Farm Lloyds, Plaintiff in the instant case ("Plaintiff" or "State Farm Lloyds"), filed suit in this Court seeking a declaratory judgment that it does not have a duty to defend or indemnify the Chandlers for the claims brought against them in the Underlying Suit.  Specifically, Plaintiff contends the claims asserted by the Normans against the Chandlers are not covered because of a mold exclusion clause contained in the policy.  Plaintiff has moved for summary judgment on its declaratory judgment action.

## SUMMARY JUDGMENT STANDARD

The granting of summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion.  *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).  The party seeking summary judgment carries the burden of initially demonstrating the absence of a genuine issue concerning any material fact in the case.  This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2554 (1986).  The moving party satisfies its burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id*.

Federal Rule of Civil Procedure 56 does not impose a duty on a district court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996) (citations omitted).[1]  Once the moving party has satisfied its burden, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The non-movant must also articulate the precise manner in which evidence he sets forth supports his claims.  *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citations omitted).   If the non-movant fails to set forth specific facts to support an essential element in that party's claim and on which that party will bear the burden of proof, then summary judgment is appropriate.  *Celotex Corp*, 106 S.Ct. at 2552-53.  Even if the non-movant brings forth evidence in support of its claim, summary judgment will be appropriate "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (citations omitted).

## DISCUSSION

**A.   The "Eight Corners" Rule**

The sole issues before the Court are whether Plaintiff has a duty to defend or a duty to indemnify the Chandlers in the Underlying Suit.  Texas courts utilize the "eight corners" rule when determining whether an insurer has a duty to defend an insured. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004).  Under the eight corners rule, the insurer's duty to

---

[1]   The Court also notes that Local Rule CV-56(b) states that a party's response to a summary judgment motion should "be supported by appropriate citations to proper summary judgment evidence . . . ."  Local Rule CV-56(c) further states that the Court "will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact. . . ."

defend is determined by examining only the allegations in the most recent complaint and the provisions of the insurance policy. *Id.*; *see Nat'l Am. Ins. Co. v. Breaux*, 368 F.Supp.2d 604, 613 (E.D. Tex. 2005). The eight corners rule is to be applied liberally in favor of the insured, with all doubts resolved in the insured's favor. *Primrose*, 382 F.3d at 552. "If *any* allegation in the complaint is *even potentially* covered by the policy then the insurer has a duty to defend its insured." *Id.* Nevertheless, an insurer is required to defend only those cases within the policy coverage, and is entitled to rely on the plaintiff's allegations in determining whether the facts are within the coverage. *Taylor v. Travelers Ins. Co.*, 40 F.3d 79, 81 (5th Cir. 1994) (citing *Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)).

In a case analyzed under the eight corners rule, the insured bears the initial burden of showing that there is coverage, and the insurer then bears the burden of proving the applicability of any exclusions in the policy. *Primrose*, 382 F.3d at 552-53. If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that the claims fall within an exception to the exclusion. *Id.* at 553. State Farm Lloyds acknowledges that the Policy was effective during the time period when the incidents made the basis of this suit occurred. The Chandlers contend that their defense to the Underlying Suit is covered by the Policy, but State Farm Lloyds argues that a Fungus (Including Mold) Exclusion Endorsement (the "Mold Exclusion") applies to exclude coverage of the claims in the Underlying Suit.

**B.    Can the Chandlers' Answer in the Underlying Suit be Considered in Determining Coverage?**

The Mold Exclusion states, in pertinent part:

In all policies, the following exclusion is added under **BUSINESS LIABILITY EXCLUSIONS**:

> [Under Coverage L, this insurance does not apply:]
>
> to any:
>
> a. **bodily injury**, **property damage**, **personal injury** or **advertising injury** arising out of the actual alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any **fungus**;
>
>   (1) at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; or. . . .
>
> **DEFINITIONS**
>
> In all policies, the following definition is added under **DEFINITIONS**:
>
> **fungus** means any type or form of fungi, including mold or mildew, and any mycotoxins, spores, scents or by products produced or released by fungi.

State Farm Lloyds argues that the Mold Exclusion relieves it from any obligation to provide coverage for the claims brought by the Normans in the Underlying Suit. The Chandlers do not dispute that the Mold Exclusion "expressly provides that coverage is excluded for bodily injury, including death, arising out of the actual or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of mold." Rather, the Chandlers argue that their Answer to the Normans' petition in the Underlying Suit, which denies that there was any life-threatening exposure to mold at the premises covered by the policy, raises a genuine issue of material fact sufficient to preclude summary judgment on the issue of coverage.

The Chandlers argue, therefore, that the Court should look to their Answer in the Underlying Suit in determining whether a genuine issue of material fact sufficient to preclude summary judgment exists. As the Court has discussed, however, under the eight corners rule the insurer's duty to defend is determined by examining <u>only</u> the allegations in the most recent petition and the

5

provisions of the insurance policy. *Primrose*, 382 F.3d at 552; *Taylor*, 40 F.3d at 81; *Breaux*, 368 F.Supp.2d at 613; *King*, 85 S.W.3d 185, 187 (Tex. 2002); *McManus*, 633 S.W.2d at 788. An insurer is entitled to rely on the plaintiff's allegations in determining whether the facts are within the coverage. *Taylor*, 40 F.3d at 81. "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *King*, 85 S.W.3d at 187. Thus, the Court must examine only the Normans' most recent petition in the Underlying Suit and the provisions of the insurance policy, and shall not consider the Chandlers' Answer in the Underlying Suit. Therefore, the contentions set forth in the Answer do not raise a genuine issue of material fact regarding whether State Farm Lloyds is obligated to defend and provide coverage for the Chandlers in the Underlying Suit.

C. **Application of the "Eight Corners" Rule to State Farm Lloyds' Duty to Defend: Analysis of the Live Petition in the Underlying Suit and the Provisions in the Policy**

Considering only the Normans' allegations in their live petition in the Underlying Suit and the provisions of the Policy, the Court finds that the Chandlers have failed to raise a genuine issue of material fact regarding State Farm Lloyds' duty to defend in the Underlying Suit. The Chandlers have acknowledged that the Mold Exclusion excludes coverage for bodily injury and death arising out of the "actual or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of mold." The question is, therefore, whether the live petition in the Underlying Suit alleges death and bodily injury "arising out of" any of the aforementioned contact with or exposure to mold.

The Fifth Circuit has recognized that the words "arising out of" are not narrow and specifically limited words, but are "broad, general and comprehensive terms effecting broad

coverage." *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co. of Wis.*, 189 F.2d 374, 378 (5th Cir. 1951); *see Nutmeg Ins. Co. v. Clear Lake City Water Auth.*, 229 F.Supp.2d 668, 684 (S.D. Tex. 2002). The words "arising out of" are words of much broader significance than the words "caused by," and are ordinarily understood to mean "originating from," "having its origin in," "growing out of," "flowing from," "incident to" or "having connection with." *Red Ball*, 189 F.2d at 378. The Fifth Circuit has noted that "when an exclusion precludes coverage for injuries 'arising out of' described conduct, the exclusion is given a broad, general, and comprehensive interpretation. A claim need only bear an incidental relationship to the described conduct for the exclusion to apply." *Scottsdale Ins. Co. v. Tex. Sec. Concepts and Investigation*, 173 F.3d 941, 943 (5th Cir. 1999); *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir. 1998). In addition, the Texas Supreme Court has held that the term "arise out of" means that there is simply a "causal connection or relation." *Utica Nat'l Ins. Co. of Texas v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (citing *Mid-Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999)).

The Normans' allegations in the Underlying Suit are contained in the Normans' First Amended Original Petition and Applications for Temporary Restraining Order and Temporary Injunction. The Normans allege that "[the Chandlers] failed to properly inspect, maintain and repair the Apartment, HVAC system and the building envelope which led to water/moisture intrusion and fostered an environment conducive to mold growth. As a result of Defendants' negligent maintenance, repair and inspection of the Apartment, life-threatening molds were allowed to develop in Plaintiffs' residence." The Normans contend that tests conducted by the Texas Department of Health "revealed the presence of several types of toxic molds in the apartment where the infant died," and argue that "the mold growth in the Apartment and the resulting death of Jasmine Norman

and injuries to Jeremiah Norman were the direct results of [the Chandlers'] negligence in the maintenance, inspection and repair of the property, including the HVAC system and the building envelope."

The Court, having thoroughly reviewed the allegations made in the Normans' live petition in the Underlying Suit, finds that the petition alleges bodily injury and death "arising out of" the actual or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of mold, as the phrase "arise out of" is defined under Fifth Circuit law. That is, the Normans' petition alleges bodily injury and death that originates from, is incident to, or has a connection with, contact with or exposure to mold, as outlined in the Mold Exclusion. *Red Ball*, 189 F.2d at 378. Giving the Mold Exclusion a broad, general and comprehensive interpretation, the Normans' allegations in the Underlying Suit bear at least an incidental relationship to contact with or exposure to mold, and thus the Mold Exclusion applies to the Normans' claims. *Scottsdale Ins. Co.*, 173 F.3d at 943.

The Chandlers raise the alternative argument that the alleged injuries were caused by "water damage or accidental discharge, leakage or overflow of water or steam within a plumbing, heating or air conditioning system and would fall under the water damage exception to the policy." The Chandlers did not submit any evidence in support of their response to State Farm Lloyds' motion for summary judgment and, consequently, did not cite to any specific "water damage exception" in the Policy that would cover the Normans' claims. Nevertheless, the Policy contains several clauses referring to water damage. Specifically, exclusions related to water can be found in **SECTION I**, **LOSSES INSURED AND LOSSES NOT INSURED**, under paragraphs 1(d), 2(k) and 2(l). Section I states, in pertinent part:

8

**LOSSES INSURED**

We insure for accidental direct physical loss to property covered under this policy unless the loss is:

    1.    limited in the **PROPERTY SUBJECT TO LIMITATIONS** section;

         or

    2.    excluded in the **LOSSES NOT INSURED** section that follows.

\* \* \*

**LOSSES NOT INSURED**

    1.    We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss:

State Farm Lloyds directs the Court to three provisions relating to water damage that the Chandlers apparently reference in their response, which appear in paragraphs 1(d), 2(k) and 2(l) under the Policy's **LOSSES NOT INSURED** section. Even if the injuries the Normans allege were caused by water in a manner prescribed by paragraphs 1(d), 2(k) or 2(l), coverage for such injuries would be, by the very terms of the Policy, specifically excluded by the Policy's **LOSSES NOT INSURED** section. In any event, Section I provides coverage for accidental direct physical loss to <u>property</u> covered under the policy that is not excluded under **LOSSES NOT INSURED**. As stated in Section I, the "property" covered under that section is limited to "Buildings" and "Business Personal Property" owned by the insured, as listed therein. Because the claims in the Underlying Suit are based upon personal injury suffered by the Normans, and not upon physical loss to property owned by the insured and covered under the Policy, the provisions related to water in Section I, even

if not specifically excluded by the **LOSSES NOT INSURED** provision, would not operate to provide coverage for the Normans' claims.

State Farm Lloyds also points the Court to a provision found in Section I, **EXTENSIONS OF COVERAGE**, entitled **Water Damage**. The Chandlers did not cite this provision in their response to State Farm Lloyds' motion for summary judgment. Nevertheless, this provision provides an extension of coverage for parts of buildings and structures torn out and replaced as required to repair damaged systems and appliances from which water or steam escapes. This provision is wholly inapplicable to the Normans' allegations in the Underlying Suit. State Farm Lloyds references a provision found in Section I, **OPTIONAL COVERAGES**, entitled **OPTION MB - Mechanical Breakdown**. However, this provision applies only to "covered property" under Section I, which is limited under the Policy to "Buildings" and "Business Personal Property" owned by the insured and which therefore does not provide coverage for the Normans' claims in the Underlying Suit.

The Chandlers' defense that the damage the Normans suffered falls under the "water damage exception" to the Policy is not supported by any proper summary judgment evidence. Nevertheless, to the extent that the Policy does provide coverage for water damage, the provisions of the Policy that provide such coverage fall under Section I of the Policy and apply only to property, including buildings and business personal property, owned by the insured. Section II of the Policy, which contains the Mold Exclusion, on the other hand, applies to sums the insured becomes legally obligated to pay as a result of bodily injury, property damage, personal injury and advertising injury. The Chandlers have not cited, and the Court has not found, any portion of the Policy, whether in Section II or elsewhere, providing coverage for damages they became legally obligated to pay because of bodily injuries, property damage, personal injury or advertising injury arising out of

"water damage." Rather, the Mold Exclusion specifically excludes coverage for such injuries arising out of exposure to or contact with mold. State Farm Lloyds' motion for summary judgment on the issue of whether it has a duty to defend the Chandlers in the Underlying Suit should be granted.

**D.** **State Farm Lloyds' Duty to Indemnify**

State Farm Lloyds moves for summary judgment on the issue of whether it has a duty to indemnify the Chandlers for the Normans' claims in the Underlying Suit. The duty to defend and the duty to indemnify are separate and distinct duties. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997); *State Farm Lloyds v. G.M.W.*, 53 S.W.3d 877, 889 (Tex. App.–Dallas 2001, pet. denied). Generally, the duty to defend is determined based upon application of the eight corners rule, while the duty to indemnify is determined from the actual underlying facts that result in the insured's liability. *State Farm Lloyds v. G.M.W.*, 53 S.W.3d at 889; *J.E.M. v. Fid. & Cas. Co. of N.Y.*, 928 S.W.2d 668, 673 (Tex. App.–Houston [1st Dist.] 1996, no writ) (citing *Cluett v. Med. Protective Co.*, 829 S.W.2d 822, 828 (Tex. App.–Dallas 1992, writ denied)).

The duty to defend is broader than the duty to indemnify, and when there is no duty to defend under the terms of the policy and under the factual allegations in the underlying petition, there can be no duty to indemnify, even with proof of all the factual allegations raised in the Underlying Suit. *State Farm Lloyds v. G.M.W.*, 53 S.W.3d at 889; *Folsom Inv., Inc. v. Am. Motorists Ins. Co.*, 26 S.W.3d 556, 559 (Tex. App.–Dallas 2000, no pet.), *rev'd other grounds*, 85 S.W.3d 185 (Tex. 2002). It may be necessary at times to defer resolution of the indemnity issue until after resolution of the liability issue, because coverage may depend upon facts actually proved in the underlying lawsuit. *State Farm Lloyds v. G.M.W.*, 53 S.W.3d at 889. In some cases, however, the Court may decide the indemnity issue before judgment issues in the underlying suit, if "the insurer has no duty to defend

*and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" *Id.*; *see Folsom Inv., Inc.*, 26 S.W.3d at 559. This Court has previously found that the petition in the Underlying Suit does not state factual allegations sufficient to invoke State Farm Lloyds' duty to defend under the Policy. Because the Court has found that there is no duty to defend under the terms of the policy and under the factual allegations in the underlying petition, there can be no duty to indemnify, even if the Normans proved all of their factual allegations in the Underlying Suit.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment should be granted.

IT IS SO ORDERED.

**SIGNED this 6th day of October, 2005.**

_____
PAUL BROWN
SENIOR UNITED STATES DISTRICT JUDGE